***********
In accordance with the directives of the North Carolina Supreme Court and upon review of the competent evidence of record, the Full Commission enters the following Opinion and Award.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties as: *Page 2 
 STIPULATIONS
1. All parties have been correctly designated and there is no question as to misjoinder or non-joinder of parties.
2. The accident involving plaintiff, which is the subject of this claim, occurred on July 18, 1998 in the African Pavilion of the North Carolina Zoological Park.
3. The plaintiff's date of birth is April 1, 1940, so at the time of the accident which is the subject of this claim, plaintiff was 58 years old.
4. The mortuary tables of N.C. Gen. Stat. § 8-46 are in evidence. According to those tables, plaintiff has a life expectancy (at her present age of 61) of 20.4 years.
5. All deposition exhibits are authentic and are admissible into evidence. Plaintiff's medical record and bills, paginated from C-0001 through C-0874, are authentic and genuine and are in evidence.
6. Plaintiff's medical records and X-rays (including positives of X-rays) are in evidence and can be used for substantive and illustrative purposes, and that such items can be used by either party in lieu of medical expert testimony. The parties agreed that no medical expert testimony would be required by live appearance, deposition or video deposition.
7. The surgeries performed at UNC Hospitals by Dr. Bos, in Raleigh by Dr. Fajgenbaum, and in Ohio by Dr. Pugh and the rehabilitation treatments plaintiff received in North Carolina and Ohio were necessary, related and resulted from the injuries plaintiff suffered in the accident which is the subject of this claim. The cost of those treatments was $80,094.67
8. The report from Dr. Pugh in Ohio is admitted into evidence in lieu of deposition testimony.
 ***********
Based upon the evidence of record, the Full Commission finds as fact the following: *Page 3 
 FINDINGS OF FACT
1. Plaintiff was injured at the zoo's African Pavilion on July 18, 1998 when an approximately 34-foot tall ficus benjamina, a tropical tree with multiple trunks, fell onto a nearby Traveler's tree, a portion of which broke off and hit plaintiff. Two of the four cables on theficus tree snapped during the fall of the tree.
2. Plaintiff's primary injury was a right femur fracture, which required multiple surgeries due to a non-union of the bone and misalignment of the healed fracture. The last surgery, to correct the alignment problem, was performed on July 6, 2000 by Kevin J. Pugh, M.D., the Director of the Division of Orthopaedic Trauma in the Department of Orthopaedics at The Ohio State University Medical Center. Dr. Pugh wrote on August 9, 2001 that plaintiff is doing quite well, her leg lengths are equal, her muscle strength is essentially equal on both sides, and that she walks with a normal gait. Dr. Pugh further found that while prior to his surgery, plaintiff had an impairment of ten percent of the whole person as a result of the accident, this has been corrected by the surgery and plaintiff now does not have a significant impairment, the residual deformity is now non existent, her joint range of motion are normal and her strength are excellent. Plaintiff's claim of a continuing need to use a cane and of continuing significant disability is not accepted as credible and is not supported by the medical evidence.
3. There was no evidence that the first of the two named employees, Ron Ferguson had any involvement with the tree that fell on plaintiff.
4. The other named employee, Virginia Wall, had been defendant's Curator of Horticulture since 1987. Ms. Wall, an expert in zoological horticulture in indoor conservatory type environments and in growing tropical plants, was responsible for the management of all of the zoo's indoor and outdoor plants through the supervision of 50 staff members. The zoo is one *Page 4 
of the largest in the United States. At the time of the hearing before the deputy commissioner, Ms. Wall had more than 23 years in the field.
5. The ficus tree in question had been purchased and planted in 1984 when it was 18-20 feet tall. It was in a planter containing soil that was four feet deep and irregularly shaped with a radius varying from 7.5 feet to 11 feet. The tree was in the center of the planter, 7-10 feet from the walkways. The tree fell over on June 27, 1988. At the time of that fall, the tree was not cabled, it was smaller, and the tree's root ball was more compact. The tree and its roots appeared healthy so it was replanted and six, seven-strand, 3/8" cables going in four directions were looped around the tree and attached to the planter walls. The cables were used to aid the tree in keeping it upright and to assist in monitoring the tree.
6. The cables on the tree were thereafter checked monthly for slack, tension and deterioration by Virginia Wall's staff. These monthly checks on the cable were not routinely recorded in the logs unless the staff members found a change in the cables that would merit further monitoring. All plants were also given a daily visual inspection for general health, appearance, and special problems by the staff.
7. The last recorded check on cables on the ficus tree were made by experienced staff members on Friday, July 17, 1998. No problems were recorded. Ms. Wall learned from a staff member after the incident involving plaintiff that one of the cables was a little bit loose, but the degree of looseness was so minor as to not warrant recordation, therefore there was not sufficient notice to the staff that theficus benjamina could present a hazard to the public and it was not unreasonable to wait until Monday for the pruning given the circumstances.
8. The tree had been pruned regularly. Pruning had been done twice a year since 1988 in the winter and summer. This was a heavy pruning to remove the weight of new foliage, to balance the tree and its root system, curtailing any shifting or change in position, removing *Page 5 
any disease and decay, and to allow for aesthetics and more light transmission. This tree was scheduled as the first tree to be pruned during the summer pruning to begin on July 20, 1998 due to its heavy canopy. The priority and pruning had been planned by a knowledgeable and experienced team from Ms. Wall's staff that included certified tree climbers and an arborist. This was the regularly scheduled summer pruning of the tree.
9. The tree was watered every four weeks and was checked two weeks after with a soil moisture probe by members of Ms. Wall's staff. The last regular watering was on June 23, 1998 and the last moisture probe record was on July 7, 1998 which called for some spot watering in the area. There was also a regular fertilization schedule based on annual soil sample reports, and observed light levels and rate of growth in the building. A detailed record was kept of the fertilizer applied. Various biological controls and sprays were applied on other vegetation in the area of the tree.
10. Each week before the facility was opened to the public, the foliage of the plants was syringed with a hose to add humidity to the air, to wash foliage, and to control insect infestations. The tree had last been syringed by members of Ms. Wall's staff at 9:00 a.m. on July 18, 1998, some six hours before the accident.
11. On July 18, 1998, the multiple stemmed ficus tree appeared healthy and free from decay. There were no indications that the tree was diseased or under stress. It did not appear to be hazardous and had stood for more than ten years under the protocols then in effect.
12. The accident involving the plaintiff and the care of theficus tree by Ms. Wall and her staff, and the testimony and evidence at the hearing was reviewed by Robert R. Halpern, an expert in zoological horticulture including the maintenance of tropical trees indoor in large conservatories and exhibits. Mr. Halpern had served for more than 17 years as Curator of Horticulture at the Bronx Zoo. His duties were similar to those of Ms. Wall, managing *Page 6 
horticultural maintenance as he served for five and one half years managing horticultural maintenance at the Cincinnati Zoo. He had been involved in planning a number of major exhibits at other locations. He had been responsible for ficus trees that were 40-50 feet tall. He had visited the site and was very familiar with the program and staff at the North Carolina Zoo. Mr. Halpern found that the care of the tree in question met all industry standards including the pruning, watering, fertilizing, cabling, syringing, soil mixture, etc. The care of the tree showed incredible care and attention. The data available was insufficient to say why the tree fell and plaintiff's witnesses went too far and engaged in speculating about the mechanism of the fall and second-guessed the decisions of the staff at the scene. The fact that the tree had fallen ten years before was not relevant. The tree did not appear to be hazardous.
13. Ms. Wall is a leader in the field of zoological horticulture, a standard setter, and had an experienced staff on which to rely.
14. According to Ms. Wall and Mr. Halpern, the care and management of the ficus tree met the standards of care in the field of zoological horticulture.
15. Kenneth Twombly maintained trees and shrubs in landscapes in the Connecticut area, rather than in a conservatory environment. He did not grow ficus trees. He had no experience in growing large tropical trees and no experience in designing or managing indoor conservatory environments. He had never cabled or stabilized a tropical plant, much less a ficus benjamina, had never been to the North Carolina Zoo, and admitted that he could not see enough of the tree in the photos to say exactly what happened. He was not familiar with the standard of practice in North Carolina in the field of zoological horticulture and speculated freely about the circumstances surrounding the accident that injured plaintiff.
16. Mr. Whitley's expertise as an arborist and forester is not helpful. His experience is primarily as a Christmas tree grower and in running a tree service climbing and cutting large *Page 7 
outdoor trees. His experience with tropical trees is extremely limited in scale and time. All he testified to was maintaining a small 14-foot tall ficus tree in a small 3 ½ feet diameter planter along with some other indoor tropical plants one day a month for some unspecified period of time. He attempted to cable the tree by attaching a cable with a lag bolt, apparently unsuccessfully, because shortly thereafter the tree was removed, thus ending his experience with this genus and species with the exception for a very small specimen in a pot at his house. Both Mr. Twombly and Mr. Whitley showed their lack of knowledge of ficus trees in contending that one could attach cables to the tree with lag bolts. However, lag bolts cannot be used to attach cables to a ficus tree because the wood is too soft and brittle. Like Mr. Twombley, Whitley had no experience in designing or managing indoor conservatory environments, had never inspected the site of the tree involved and showed no familiarity with the standard of practice in North Carolina in the field of zoological horticulture. Further, he engaged in speculation about the cause of the accident and the facts without supporting factual information.
17. The testimony of Kenneth Twombly and Cullen Whitley is given little weight as it does not supply any special expertise.
18. The greater weight of the evidence indicates that neither Ms. Wall nor her staff knew or should have known that the ficus tree was likely to fall. There is no showing that Ms. Wall violated any applicable standard of care in her management of the horticulture department and supervision of the horticulture staff. There is no showing that any member of Ms. Wall's staff violated any applicable standard of care in the completion of their duties regarding the care of the ficus.
 ***********
Based on the following stipulations and findings of fact, the Full Commission makes the following *Page 8 
 CONCLUSIONS OF LAW
1. Plaintiff filed her action pursuant to the Tort Claims Act, N.C. Gen. Stat. § 143-291 et seq. (1993). This Act allows persons to sue state departments or agencies for injuries caused by negligence of state employees.
2. Pursuant to N.C. Gen. Stat. § 143-291, plaintiff must show that the injuries sustained were the proximate result of a negligent act of a named state employee acting within the course and scope of his employment. To establish actionable negligence, plaintiff must show that: "(1) defendant failed to exercise due care in the performance of some legal duty owed to plaintiff under the circumstances; and (2) the negligent breach of such duty was the proximate cause of the injury."Bolkhir v. N.C. State University, 321 N.C. 706, 709, 365 S.E.2d 898, 900
(1988).
3. Under the provisions of the Tort Claims Act, negligence is determined by the same rules applicable to private parties. Bolkhir v.N.C. State University, 321 N.C. 706, 709, 365 S.E.2d 898, 900 (1988).
4. The Tort Claims Act must be strictly construed. NorthwesternDistributors, Inc. v. DOT, 41 N.C. App. 548, 255 S.E.2d 203, cert.denied, 298 N.C. 567, 261 S.E.2d 123 (1979).
5. The greater weight of the evidence shows that Ms. Wall's practices and management of her staff in the care of the ficus benjamina were reasonable and met or exceeded the standards for monitoring, record keeping, pruning, watering, fertilizing, cabling, syringing and soil mixture in her field. Plaintiff has failed to prove that either of the named employees of defendant, Ron Ferguson and Virginia Wall or the staff at the North Carolina Zoo breached any applicable standard of care. The greater weight of the evidence shows that the actions of the staff at the North Carolina Zoo in following the standards and practices of Ms. Wall in the care of the ficus benjamina were reasonable and met or exceeded the standards of the field, including *Page 9 
the monitoring, record keeping, pruning, watering, fertilizing, cabling, syringing and mixing of the soil. Therefore, plaintiff has failed to prove negligence and is not entitled to recovery. Bolkhir,321 N.C. at 709, 365 S.E.2d at 900, N.C. Gen. Stat. § 143-291.
 ***********
Based on the foregoing stipulations, findings of fact, and conclusions of law, the undersigned enters the following
 O R D E R
1. Plaintiff's claim is hereby denied.
2. Each side shall pay its own costs.
This the 13th day of October 2005.
S/_____________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/______________ BUCK LATTIMORE CHAIRMAN
DISSENTING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER *Page 10